O’Neall, J.
dissenting. In this case, my absence at the argument is to me a subject of deep regret. Had I known the case under argument would have been suspended, and this case taken up, my duties in another quarter would have been foregone, and I would have been present. Situated as I am, I feel it is a duty I owe to myself and to the law, to state my views on the point on which a majority of the court have determined to grant a new trial.
The question whether depositions, (of witnesses since dead) taken before the coroner on an inquest super visum corporis, are admissible in evidence on the trial of the slayer, is neither new nor doubtful. The Statute of 1 & 2 P. & M. sec. 5, provides that, “every coroner, upon inquisition before him found, whereby any person or persons shall be indicted for murder or manslaughter, or as accessary or accessaries to the same before the murder or manslaughter committed, shall put in writing the effect of the evidence given to the jury before him, being material,” and shall certify the same evidence to the next Court of Sessions. By the Act of 1839, p. 51, sec. 20, it is provided, that the testimony of all witnesses examined upon an inquest, shall *133 be taken down in writing by the coroner, and signed by the witnesses. By the 32d sec. p. 53, the original inquest and evidence is to be returned to the clerk of the district. What is the value or propriety of these provisions, if they be not intended to perpetuate the testimony ? In the reign of the 2d Charles, the question, whether the evidence given before the coroner, in the event of the death of the witnesses, ,was or was not admissible, was considered and solemnly adjudged. In Lord Motley's case, 7 State Trials, 421, the judges of England, consisting of Sir JohnKelyng, C. J. K. B. Sir Orlando Bridgman, C. J. of the Common Pleas, Sir Matthew Hale, C. Bar. of the Exchequer, Atkins, Twisden, Tyrell, Turner, Browne, Windham, Archer, Raynsford and Morton, summoned to attend the trial before the Peers, met, and, inter alia, resolved, una voce, “that in case any of the witnesses which were examined before the coroner were dead or unable to travel, and oath made thereof, that then the examination of such witnesses so dead or unable to travel, might be read, the coroner first making oath that such examinations are the same which he took upon oath, without any alteration whatever.” This point, thus solemnly settled, has been uniformly followed ever since, with the single exception, that the record of the evidence certified and signed by the coroner, is now taken in place of his oath. To this, it is objected, that it does not appear but that the prisoner might have been present at the examination ; so, here, it does not appear but that Campbell might have been present. But I take it, if any such distinction as presence or non-presence had been deemed material, it would have been stated in as solemn a settlement' of the rule of evidence as that which occurred in Lord Motley's case. In 1 Lev. 180, I find Bromwich's case, who was tried in the King’s bench, as principal in the second degree to Lord Morley, in the murder of Hastings, in which it was ruled, that the depositions of two witnesses taken before the coroner, who were now dead, should be read. The same case is reported in 2 Keb. 19, in which it is stated, in this wise — “White, the coroner of Westminster, offered the examination of witnesses, who were sworn to, be dead, and swearing that they *134 were the same taken before him, viz, One Woodward and Hancock, which, per curiam, is good evidence of murther or any other crime.” It is said these are old cases; true,, they have near two hundred years of antiquity on their sideand in that time, being never questioned, how can they be now overturned ? Instead of being questioned, until Russell-, Starkie and Roscoe wrote, no one ever dreamed of doubting, them. That great and good man, Sir Matthew Hale, in his Pleas of the Crown, 2d vol. 284, recognizes the rule in its broadest terms. Judge Buller,. in his trials at nisi prius, 242, .says, “If the witnesses examined on a. coroner’s inquest be dead' or beyond sea, their depositions may be read ; for the coroner is- an officer appointed, on the behalf of the public, to make inquiry about the matter within his jurisdiction.” In Leach’s Crown- Cases, 14, Webster’s case will be found, in which the deposition of an accomplice taken before the" Lord C. J. Lee, was allowed to be read, on proof of his death. In the King vs. Eriswell, 3 T. R. 713, it is stated by Buller, J. that the examination of a pauper, under the 13 & 14 Car.. 2, “was very similar to the case of depositions before a coroner, which has been long settled to be good evidence, though the person accused be not present when it is taken, nor ever heard of it.,, till the. moment it is produced against him.” Lord Kenyon, who differed from Buller on the point before them, admitted the rule in criminal cases, as to depositions before the coroner. For. he said; — -“These exceptions alluded to, meaning depositions taken before magistrates and coroners, are founded on the statutes of P. & M. and that they go no further, is abundantly proved. Besides,, the examination before the coroner is an inquest of office, it' is a transaction of notoriety, to which every person has access.”
After such an array of authority, I confess that I should as little think of questioning the rule, as I would the first rule, of evidence. It is.true, Judge Johnsoet, in 2 Hill,, 610, did express a doubt about the admissibility of such evidence, but. the point-was not before him,, and he merely acquiesced in the reasonableness of Starkie’s doubts. Our Act of 1839 is stronger than that of P. & M. The depositions are.to be signed by the witnesses,.and. it hence shews *135 that, as a measure of perpetuation, and at the same time making- the evidence more certain, it was thought to be desirable that the evidence should be taken down, read to the witnesses, and then signed by them. Thus making every thing as certain as human imperfections will allow. I attach no consequence to the presence of the prisoner, or his right of cross-examination. Neither of them are of any intrinsic consequence to truth ; and then, when it is remembered this is an inquest of office, and that the testimony is only resorted to where God has put it out of the power of the State, or the accused, to have the benefit of a fresh examination of the witnesses, there can be no reason to complain of its admissibility. If the depositions are not competent on the part of the State, how can they be on the part of the accused 1 The rule must work both ways, or fail. No one heretofore would have thought of objecting to the evidence, if offered by the prisoner,
Evans, J. concurred.